STATE OF OHIO, EX REL WILSON, COUNTY SOLICITOR, .V. JOHN H. GIBSON, TREASURER, ET AL.

1. The act of November 14, 1902, authorizing a contract between the county treasurer and an outside party for the collection of forfeited taxes and assessments, and the contracts made thereunder between the county treasurer and Wm. F. Chambers, are not invalid because the said contractor is a county officer not elected by the people, nor because it extends beyond the term of the treasurer making it, nor because it invests the contractor with sole authority to collect forfeited taxes, nor because the collection of these taxes is farmed out to an individual, nor because the money for the payment of the obligation is not in the treasury nor properly certified by the auditor.

2. But the law confines the scope of such a contract explicitly to forfeited taxes for the years prior to 1899, and the contract in question violates this provision in that it permits the contractor to include current taxes accruing subsequently year by year.

HOSEA, J.

The amended petition alleges the making of a contract on or about November 14, 1902, by the county treasurer of Hamilton county, with William F. Chambers, as follows:

"COUNTY TREASURER'S OFFICE,
"HAMILTON COUNTY, OHIO.

"This article of agreement entered into at Cincinnati, Ohio, this 14th day of November, 1902, by and between

John H. Gibson, as treasurer of Hamilton county, Ohio, acting by and under authority vested in him under Section 1104 of the Revised Statutes of Ohio, as party of the first part, and William F. Chambers, party of the second part, witnesseth:

"1. That said party of the second part is hereby employed by the party of the first part in accordance with said Section 1104 of the Revised Statutes of Ohio, to collect the forfeited taxes and assessments in the county of Hamilton and state of Ohio, to the full extent of the authority granted by said section.

"2. The term of said employment shall be for a period of two years from the final approval of this agreement, as hereinafter provided.

"3. The party of the second part shall receive for the services rendered by him under the contract compensation of twenty-five (25) per centum of the amount collected by him under this contract, the same to be paid from said amount collected as may be provided by law.

"4. All expenses connected with the collection of said taxes and assessments shall be borne by the party of the second part and said compensation of twenty-five (25) per centum of the amount collected and paid into the treasury by said party as hereinbefore provided, shall be in full for all services rendered by him and for all sums expended by him in the performance of this contract.

"5. This contract shall be subject to the approval of the board of county commissioners of Hamilton county, Ohio, and subject to the further approval as to municipal assessments by the legislative body of any municipality in said city interested in such municipal assessments.

"In witness whereof, the said parties acting as hereinbefore set forth, have hereunto set their hands on the day and year hereinbefore mentioned in duplicate, one to be retained by each party.

"JOHN H. GIBSON,
"*Treasurer of Hamilton County, Ohio.*
"WILLIAM F. CHAMBERS.

· "Approved November 15, 1902.
  "CHRISTIAN BARDES,
  "WM. A. BLAIR, and
  "C. C. RICHARDSON,·
  "*County Commissioners of Hamilton County, Ohio.*

           "[COUNTY COMMISSIONERS' SEAL.]"

It is alleged that. this contract was made under the act of 1902 (R. S., 1104), and that this law is invalid; but assuming the law to be valid, the contract goes beyond the intended scope of the law in terms and in the practical construction given it by the parties to it; and the court is asked, alternately, to enjoin all acts and payments under it as illegal; or to construe the contract and enjoin all unauthorized acts under it.

The answer ·admits the contract; but upholds both the validity of the law and the contract, and denies any improper construction of, or operations under, the contract.

Objection is made to the validity of the law in question, under Sections 1 and 2, Article X, of the Constitution, which provide in substance that county officers shall be elected by the people; and the objection proceeds ·upon the theory that the act in question makes the contractor under it a "county officer," and does not provide for his election.

A counter objection might be made that injunction will not lie against a public officer alleged to hold under an unconstitutional law (21 C. C., *State, ex rel,* v. *Craig et al;* affirmed in 64 O. S., 588).

Waiving this point, the act of 1902 (95 O. L., 95) provides that "the county treasurer shall have power to contract with a suitable person or persons to collect any such delinquent or forfeited taxes * * * and the person or persons contracting shall have the right to proceed under this section in the collection of said taxes and assessments or as otherwise provided by law."

The procedure contemplated by the act is a civil action, described and defined as a remedy given the treasurer "in addition to all other remedies provided by law." The authority to contract follows immediately after, as a part

of the same recital. That is to say, the act formulates procedure at law that may, and if requested by the state auditor, must be followed by the treasurer in the collection of delinquent and forfeited taxes; and in immediate connection therewith, authorizes the employment of a contractor in a certain part of the work.

The Constitution of Ohio contemplates three classes of public servants, viz.: an "officer" (properly so-called), a "public agent" and a "contractor" (Art. II., Sec. 29). I have had occasion to distinguish between these, in the case of *Burch* v. *Harte,* decided at the present term, and upon general considerations there seems to be no reason why the contractor provided for in this act should be regarded as a "county officer." . He is a mere agent of the treasurer in the performance of a duty, in which special assistance of this character is appropriately employed, and indeed is indispensable. Such agent has no independent function, but is a personal representative of the treasurer and acts in his name. He stands in the relation of any other employe connected with a public office, who performs duties that, in a sense, are public and absolutely necessary to the administration of public business, yet do not carry with them the responsibilities chargeable upon a public officer.

The case of Game Wardens, 61 O. St., 171, *State, ex rel,* v. *Halliday,* presented very different conditions, to-wit: A statute conferring upon game wardens the independent powers of justices of the peace, peace officers, with power to arrest, seize property, etc., and having, as the court found, "an independent capacity clothed with some part of the sovereignty of the state, to be exercised in the interest of the public as required by law.

Mere assistants employed in public business are not public officers, but the agent or contractors contemplated by our Constitution (25 O. S., 21—Deputy Clerk Probate court; 57 O. St., 415—Fireman; 52 O. S., 346—Jury Commissioners; 61 O. St., 171—Clerk in Pension Office; 48 O. St., 142—Tax Inquisitor).

It is clear that the act in question does not contemplate

the appointment of a county officer, and is not, therefore, repugnant to the Constitution.

The second objection, namely, that the contract is invalid because it extends beyond the term of the treasurer making it, together with the next, to-wit, that the treasurer has no power to make such a contract for any definite term, will be considered later on.

The fourth objection, namely, that the contract invests the contractor, Chambers, with "sole authority" to collect forfeited taxes and prosecute suits in the name of the treasurer, and is therefore against public policy and void, is partially answered by the representative capacity of the contractor as the assistant of the treasurer; but is more fully covered by the ruling of the Supreme Court in an analogous case upon the contract-appointment of a tax inquisitor, reported in 48 O. St., 142, *State, ex rel,* v. *Crites, Auditor.* The court there says:

"To hold that the Constitution prohibits the Legislature to authorize the officers of the state or county to employ persons to assist in adding to the tax duplicate property unlawfully omitted therefrom, is entirely too narrow a construction of that instrument. The statute (85 O. L., 170) relating to the employment of a person to ascertain and furnish the auditor information as to omitted property, in order to get it upon the duplicate, must be regarded as a part of the general plan by which the constitutional rule that all property subject to taxation is to be equally taxed may be enforced, and therefore all contracts made in accordance with its provisions, legal and valid."

The close application of the above language to the case at bar will be obvious when it is considered that the collection of delinquent and forfeited taxes must necessarily tend to the equal and fair distribution of the burdens of taxation in precisely the same manner as does the bringing upon the tax duplicate that which by mistake or fraud has been omitted therefrom.

The fifth objection is, that under the contract the collection of forfeited taxes, etc., is farmed out to an individual, and that the payment to him of the percentage of

taxes collected as compensation under the contract is a gross misapplication of the public funds.

But this objection is also very fully considered by our Supreme Court in the case last above mentioned, where the contract provided in a similar manner for a compensation of "twenty per cent. of the amount secured to the public," that is, of the taxes recovered upon omitted property brought upon the duplicate. On this point the court says (p. 170):

"This contract is claimed to divert the public funds from their proper objects, and is therefore illegal. The claim it not well founded. The contract violates no statute of the state. On the contrary, it is a contract expressly authorized by an act of the Legislature, passed in 1888, to secure fuller and better returns from taxation. Nor is it a diversion of the public funds; but is rather a mode of compensating services actually performed for the public; and, to quicken the energies of the servant, this compensation is made to depend on the efficiency of his services."

The sixth objection to the validity of the contract is, that the money for the payment of the obligation thereby incurred was not in the treasury, or properly certified by the auditor at the time of making the contract as required by Section 2834b, Revised Statutes, nor had an estimate been made and a fund set apart as provided by Sections 1007 to 1009, inclusive (94 O. L., 76).

It is a sufficient answer to note that the contract in question was authorized by an act later in date than those cited, which, according to well-established principles, must prevail for the purpose, and in the instances contemplated by the later law, over prior statutes that may be incompatible therewith (City v. Holmes et al, 58 O. S., 104).

Concluding this branch of the case, there seems to be no tenable ground for holding the act or the contract in question invalid for any of the reasons cited. The act pertains to a branch of the administrative power of the state peculiarly within the province of the Legislature, free from any inhibitions of the Constitution, and its gen-

eral principles and purposes have been upheld by the highest judicial tribunal of the state.

We come now to examine more particularly the limitations of the law in question upon the contract, and also the operations under it.

The contract is drawn under the following clauses of the act in question:

"The auditor may place upon a separate duplicate the forfeited and delinquent taxes and assessments for the years prior to 1899, upon the request of the treasurer, and the validity and priority of lien of such taxes and assessments shall not be affected thereby; and the county treasurer shall have power to contract with suitable person or persons to collect any such delinquent or forfeited taxes or assessments at a compensation which may be deemed just and proper, subject to the approval of the county commissioners, but in no case to exceed twenty-five (25) per cent. of the amount collected, the expense of collction under such contract to be borne by such person or persons contracting," etc.

The clause authorizing the contract has manifest reference to that which immediately precedes, namely:

"Forfeited and delinquent taxes and assessments for the years prior to 1899."

This will clearly appear from the following considerations:

(1) The entire preceding part of the section has relation to a different subject-matter, namely: Suits to be brought by the treasurer to collect unpaid taxes or assessments, including "any special duplicate of delinquent or forfeited taxes or assessents," and prescribing details of such proceedings. This subject comes to a natural ending in the phrase "and the court shall make such order for the payment of costs as shall be deemed equitable and proper."

Immediately following this, and without any connecting word, comes the new subject of the taxes for the years prior to 1899, introduced by the phrase "the auditor may place upon a separate duplicate," etc.

The clause authorizing a contract for the collection of

"any such delinquent or forfeited taxes," follows the latter clause, but is connected with it by the conjunctive conjunction "and," thus clearly indicating an intended connection. This relationship with what immediately precedes would be plain enough, if the sentences were properly punctuated to accord with the ideas expressed; in which case, the entire portion of the section relating to this subject, beginning with "the auditor may place," would follow a period, and begin with a capital. But notwithstanding the manifest defects of punctuation which abound throughout the act, it is clear, both by grammatical rules, and by the relationship of ideas, that the words "any such delinquent or forfeited taxes" (for the collection of which the treasurer may contract), refer only to those of the years prior to 1899, which at the request of the treasurer might be placed upon a separate duplicate, apparently for the purpose of the contract.

(2) This view is confirmed by reference to the section of which the present act is an amendment. There the phrasing is the same, excepting that 1879 is referred to instead of 1899; and, after providing for making a separate duplicate without affecting the validity and priority of lien of such taxes, it provides, that, in certain counties, the prosecuting attorney was to enforce the lien of forfeited taxes for years prior to 1879, and the present amendment merely substitutes for the prosecuting attorney another agency, namely, a contractor, to be selected by the treasurer, and changes the date from 1879 to 1899. The entire sequence of words and ideas remains substantially the same in the amendment, except as I have indicated. The added word "any," before "such," therefore, is of little significance, and can not possibly operate to carry back the relationship to the general delinquent or forfeited taxes provided for earlier in the section. It is as though the wording had been, "if there be any," *i. e.,* forfeited taxes, prior to 1899; or, it may have been intended to imply power in the treasurer to select those which he wished to contract for of those prior to 1899.

(3) The same results follow a consideration of the

STATE *v.* GIBSON.      471

history of the statute.   It was first introduced in 1874 (71
O. L., 82) for the purpose of giving the treasurer, in addi-
tion to other remedies provided by law, power to col-
lect taxes by a simplified civil action of a summary nature.
By subsequent amendments, this was made to include
any taxes carried upon a special duplicate; delinquent and
forfeited taxes, and finally, municipal assessments; and in
1880, was added the provision relating to forfeited taxes
for years prior to 1879, with the special provision for
their collection by the prosecuting attorney.   The amend-
ment of 1902, in this respect, simply altered the date to
1899, and substituted for the prosecuting attorney a con-
tractor.

In all this, the evident purpose of the statute, as ex-
pressed in its earlier paragraphs, has remained unchanged,
namely, to clothe the treasurer with new powers to collect
all taxes so far as they can be collected, by modes of
procedure prescribed, but with the addition of special
means in the case of stale forfeitures based upon more
liberal compensation to an individual. contractor stimu-
lated by self-interest to diligent effort.   The only alterna-
tive construction would be to hold that the treasurer, un-
der this·act, could contract for all that the act specifies, viz.,
"any taxes or assessments * * * charged * * * upon the
general or˙ any special duplicate * * * for any purpose
authorized by law * * * not paid within the time pre-
scribed by law"—which savors strongly of the *reductio ad
absurdum.*

I hold, therefore, that under the act in question, a valid
contract can be made only for the delinquent and for-
feited taxes and assessments for the years prior to 1899;
that is to say, taxes accruing in 1898, and years prior
thereto, which became delinquent and forfeited, and which
the treasurer had failed to collect, by the ordinary means
at his command, or as prescribed in the act, up to 'the
date of the contract.

We come now to consider whether the contract as drawn,
falls within the authority of the statute as thus defined,

and, if yea, whether the practical construction given to it by the parties accords therewith.

The first clause of the contract defines its scope, and is as follows:

"(1) The said party of the second part is hereby employed by the party of the first part in accordance with said Section 1104 of the Revised Statutes of Ohio, to collect the forfeited taxes and assessments in the county of Hamilton and state of Ohio to the full extent of authority granted by said section."

It must be admitted that this method of drafting municipal contracts without further definition of the powers and duties of the contractor under it, is not to be commended for the reason, among others, that it may lead to friction and even litigation in determining its true scope as between conflicting views of the law entertained by the parties to it. Public contracts, of whatever nature, should be explicit; and it is the duty of public officers as representing the public, to make them so.

In the present case, the contract may be saved from failure through indefiniteness by applying the principle *"id certum est, quod reddi certum potest"* and defined by reference to the statute as providing for the collection of only the delinquent and forfeited taxes and assessments for the years prior to 1899, and consequently as within the scope and intent of the law as hereinbefore defined.

But the testimony adduced at the hearing shows that such is not the practical construction given it. From the statutes and the practice of the treasurer's office, as shown in evidence, a forfeited tax list is made every two years. The taxes for a given year become a lien on real estate in April and the auditor is required (Revised Statutes, Sections 1034 to 1042, inclusive) to make a tax list and deliver a true copy or "duplicate" thereof to the treasurer on or before October 1. This tax is payable one-half in December of the same year, and the remaining half in June of the following year. If not paid, the treasurer may collect by distress, with five per centum as penalty, which is retained by the treasurer as compensation (Re-

vised Statutes, Section 1094). Semi-annual settlements are had between the auditor and treasurer, in August and February; and at each August settlement, the auditor is required to take from the duplicate of the previous October, a list of all taxes which the treasurer has been unable to collect, and record the same, together with the taxes and penalty previously due, and also those of the current year (Revised Statutes, Section 1046), and to forward an abstract of this delinquent list to the auditor of state (Revised Statutes, Section 1053), and enter them on the duplicate of next year with accumulated taxes and penalties charged.

After the semi-annual settlement with the auditor, the treasurer is authorized to take a rule in the common pleas against the owner, where he has been unable to collect by distress, and this rule, when made absolute, has the force and effect of a judgment (Revised Statutes, Section 1097).

By further provisions of law, property delinquent at the August settlement is advertised for sale, and such as is not sold, is placed on the forfeited list; and this again advertised and offered for sale once in two years.

These various proceedings, and the additional proceedings contemplated by Section 1104, constitute a sifting process in which the treasurer is the active agent, and results, or should result, in the collection of all but a comparatively small residue of uncollected taxes which require special knowledge and diligence to reach and bring in and for which the contract here in question is provided.

But the testimony shows that the contractor is proceeding to collect upon the forfeited tax list of 1902 as ascertained and listed at the August settlement of 1901; that is to say, taxes originally accruing for the year 1900 and years prior thereto.

It is also shown that the contractor is permitted to include the current taxes accruing subsequently year by year. This is clearly beyond the scope and intent of the law, which confines it explicitly to the forfeited taxes of

years prior to 1899. The case of *The Commissioners of Hamilton County* v. *Arnold,* in 65 O. S., 479, is instructive in point of principle:

"Statutes enacted for the protection of the public revenues," say the court, "are usually not merely directory, but mandatory. * * * Each delinquent list must be read, and an employment made to collect the same, but there can be no employment of the collector to collect future lists. * * * His employment is to collect the delinquent list which has been read, or some part thereof, and when that is done his employment ends."

A public contract, in other words, must be explicit, and it is the duty of public officers, representing the public (which is the real party to the contract), not only to make the contract clear and explicit in the first instance, but to see that the contractor keeps clearly within its proper bounds. The principle of the case is that the contract must explicitly refer and be limited to a subject-matter already existing when the contract is made, and can not be stretched to include what may subsequently arise.

There remains now to be considered the clause fixing the term of employment at two years.

In the county commissioners' case cited above, the Supreme Court says:

"The employment of such collectors can not be turned into an office to be held to the end of the treasurer's term, or for any definite period. His employment is to collect the delinquent list which has been read, or some part thereof, and when that is done, his employment ends."

In other words, the authority given by law has reference to a certain thing to be done—specified work to be performed—and not for continuing services. In the present case, however, the contract, referring directly to the law for its definition, is held to be for a specific thing contemplated by the law; and the time clause must be construed merely as a limitation of time and not as a "term of employment;" that is to say, the contractor, being authorized to collect certain specific taxes, must do the work.

within a certain time. The fact that the period thus designated overlaps the term of the treasurer, is not material, under prior decisions of this court.

In conclusion, therefore, I must hold the second cause of action to be maintained. The judgment will be for the plaintiff upon the second cause of action.

The injunction order now in force will be modified to accord with this opinion and be made thereafter perpetual.

Judgment for plaintiff with costs.

*F. C. Ampt, G. C. Wilson* and *O. B. Jones,* for relator. *Frank F. Dinsmore,* contra.